UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| KIMBERLY D. REID | : | |
| Debtor | : | Bankruptcy No. 09-19695bf |
| KIMBERLY D. REID | : | |
| Plaintiff | : | |
| v. | : | |
| CITADEL FINANCIAL CREDIT UNION | : | Adversary No. 09-0388 |
| Defendants | : | |

..................................................

MEMORANDUM

..................................................

The above-captioned chapter 13 debtor, Kimberly D. Reid, filed an adversary proceeding seeking turnover of her automobile from defendant Citadel Federal Credit Union. In addition to the injunctive relief of turnover, the debtor asserted in her complaint that the defendant violated the automatic stay by retaining possession of the vehicle after learning of her bankruptcy filing, and thus she demanded damages (including punitive damages) and attorney's fees under 11 U.S.C. § 362(k).

At a preliminary injunction hearing held before my colleague, Chief Judge Stephen Raslavich, the parties agreed that the relevant facts were uncontested and were accurately set forth in the debtor's complaint. The only dispute concerned the application

of those facts to the relevant law regarding the debtor's entitlement to relief on the merits.[1] In addition, the relief sought by the debtor in this adversary was narrowed.

After Chief Judge Raslavich preliminarily ordered the turnover by Citadel of the debtor's automobile, on terms suggested by both parties and that will be set forth below, the following colloquy occurred:

> Counsel for Debtor: Your Honor, if you're willing to order turnover on that, I'll withdraw the complaint.
>
> [The Court][2]: Well, you could — you could then close the matter by saying pending further order of Court. And the further order of Court will be a ruling on the legal issue of whether the debtor has the right [of turnover] that you've asserted or whether she does not, as your opponent has asserted. And that would bring closure to the entire adversary. Is that satisfactory?
>
> Counsel for Citadel: I think that works, Your Honor.
>
> Counsel for Debtor: Yes, Your Honor.
>
> ***
>
> The Court: . . . . And, again, in order to bring closure to the whole situation, you can just provide [in the proposed order later agreed to be submitted by the parties] that the relief's being granted pursuant to the request for preliminary relief.

---

[1]To obtain a preliminary injunction, a federal court:

must consider four factors: the likelihood of success on the merits; the extent of irreparable injury from the conduct complained of; the extent of irreparable harm to the defendants if a preliminary injunction issues; and the public interest.

Clean Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995); accord Shire US Inc. v. Barr Laboratories, Inc., 329 F.3d 348, 352 (3d Cir. 2003). The only issue in controversy before Chief Judge Raslavich was the debtor's likelihood of success on the merits.

[2]The transcript reference to this statement as made by counsel for Citadel is incorrect.

> And that will be the status quo pending further order of the
> Court. And my expectation is I'll dispose of it with finality
> after review of the briefs. . . .

N.T., at 30-31, 34.

In other words, so as to reduce costs and fees and to expedite resolution of the issue of possession, the parties consented to treat the facts alleged in the complaint as true and as constituting the entire evidentiary record. Furthermore, they agreed that if the debtor had a legal right to turnover of the automobile, the terms of the preliminary injunction would be made final. If she were not entitled to turnover, Citadel would be authorized to recover possession of the vehicle. Upon that final legal determination, this adversary proceeding would be closed.[3]

The parties have submitted their legal memoranda in a timely fashion. Thus, this dispute is ripe for final adjudication.

I.

The agreed-upon facts may be summarized as follows:

---

[3] During the course of the hearing, Chief Judge Raslavich stated that, in light of the divergent views of courts on the issue of turnover, he would not find that Citadel had willfully violated the bankruptcy stay, even if turnover under section 542(a) was appropriate. N.T., at 14-15; see also In re University Medical Center, 973 F. 2d 1065, 1088 (3d Cir. 1992) (relief for willful violation of the bankruptcy stay was not warranted when "the law regarding the application of the [bankruptcy] stay to the Department's actions was sufficiently uncertain that HHS reasonably could have believed its actions to be in accord with the stay."). Debtor's counsel stated that he understood this ruling. N.T., at 15. Therefore, I need not decide whether section 362(a), by itself, requires a secured creditor to return repossessed collateral to a debtor upon notice of a bankruptcy filing. Compare In re Knaus, 889 F.2d 773 (8th Cir. 1989) with In re Richardson, 135 B.R. 256 (Bankr. E.D. Tex. 1992).

On February 14, 2004, the debtor purchased a 2002 Honda Accord Coupe from Newark Toyota World, located in Newark, Delaware. After trading in her 1997 Ford Contour, the purchase price was about $21,000, to be financed by payments of $399 per month for 72 months. Complaint, ex. A. Citadel Federal Credit Union, located in Thorndale, Pennsylvania, was identified as the intended assignee of the installment contract and security agreement. Id.

On December 9, 2009, Citadel repossessed the debtor's vehicle for non-payment. On December 11, 2009, Citadel sent a letter to the debtor informing her of the repossession. This letter also stated, in part, that:

> This vehicle will be held for a maximum period of 15 days from the date of mailing this notice in order for you to pay the amount agreed upon or balance due plus costs, which are itemized below.

Complaint, ex. B. Citadel's notice to the debtor itemized a "Total Redemption Price." Id.

The debtor filed a voluntary petition in bankruptcy on December 17, 2009. On December 18, 2009, she notified Citadel, by letter from her bankruptcy counsel, of her bankruptcy filing. Complaint, ex. C. This letter further demanded the immediate return of the debtor's automobile and stated the debtor's intention "to pay the allowed secured balance of this loan through her Chapter 13 Plan. . . ." Id.

Citadel responded orally that it rejected the debtor's demand, would retain possession of the vehicle and would seek relief from the bankruptcy stay. Complaint, ¶ 9. Whereupon, the instant adversary proceeding was filed along with a motion for preliminary injunctive relief.

After the preliminary injunction hearing outlined above, the following order was entered:

4

AND NOW, this 30th day of December, 2009, upon consideration of Debtor's Motion for Preliminary Injunction, after notice and hearing, and for the reasons stated on the record;

It is hereby ORDERED that the motion is GRANTED, PENDING FURTHER ORDER OF THE COURT, as follows:

1. Defendant Citadel Federal Credit Union ("Citadel") shall release into Debtor's possession the 2002 Honda Accord, VIN NO. 1HGCG22552A008669 (the "Vehicle"), subject to the following conditions:

> A. Debtor shall first tender to Citadel by certified check or money order one month's regular payment under the Vehicle loan, i.e. $260.10.[4]
>
> B. Upon receipt of this payment Citadel shall inform the Debtor as to the location where the Vehicle is being held and allow her to retrieve the Vehicle from that location;
>
> C. Citadel may allocate the payment, and further adequate protection payments discussed below, to the repossession fee and storage charges incurred until they are paid in full;
>
> D. Debtor shall continue to maintain insurance on the Vehicle.

It is FURTHER ORDERED that:

2. Pursuant to 11 U.S.C. § 1326(a)(1)(C), Debtor shall make pre-confirmation adequate protection payments in the amount of $260.10 directly to Citadel, by certified check, money order, or cash on the regular due date of the Vehicle loan, i.e. the 25th of the month, commencing in January 2010. Debtor will provide proof of these payments to the Standing Chapter 13 Trustee.

---

[4]Apparently, there was a prepetition modification agreement reducing the monthly loan payments to $261.10.

5

    3. If Debtor fails to make an adequate protection payment or ceases to maintain insurance on the Vehicle, Citadel will mail to the Debtor a notice of default that allows Debtor ten (10) days to cure the default. A copy of this notice shall be mailed to Debtor's counsel and the Standing Chapter 13 Trustee.

    4. Debtor's failure to cure a default discussed above shall result in Citadel being able to obtain relief from the automatic stay by filing with the Court a certification of default, without the need for a further notice or hearing.

    5. Pending further order of the Court, proceedings in the above-captioned adversary proceeding are stayed; however, the parties shall submit legal memoranda in accordance with the schedule agreed to in open court.

II.

A.

Based upon the oral understanding of the parties made in open court, the only issue before me is whether this chapter 13 debtor has the statutory right to compel turnover of the vehicle from Citadel, upon terms designed by this court to adequately protect the secured claim of that defendant.[5]

The debtor argues that federal bankruptcy law, specifically 11 U.S.C. § 542(a) and the Supreme Court's decision in <u>United States v. Whiting Pools, Inc.</u>, 462 U.S.

---

[5] I accept, as did Chief Judge Raslavich based upon comments of the parties, that the tender of the regular monthly payment from the debtor to Citadel, prior to confirmation of any chapter 13 plan, along with maintenance of insurance, constitute adequate protection. Therefore, if Ms. Reid was entitled to turnover upon providing adequate protection, these terms will be made part of the final injunction.

6

198 (1983), establish her right of turnover. She cites a number of decisions from this district and other districts in support thereof.

Relying upon Butner v. United States, 440 U.S. 48 (1979), Citadel counters that the debtor's property interests at the time of her bankruptcy filing on December 17th are determined by state law. Those property rights, Citadel maintains, are severely limited by Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA"), 69 P.S. §§ 601, et. seq., which statute permits repossession of a motor vehicle upon a debtor's default. 69 P.S. § 623. Moreover, upon repossession, Pennsylvania law provides that the owner of the vehicle has only 15 days from the date of notice of repossession to redeem the vehicle from the lender, upon payment of the loan balance due plus repossession costs and interest. 69 P.S. § 625. If the vehicle is not redeemed within that time period, the MVSFA provides:

> When a repossessed motor vehicle under an installment sale contract in not redeemed by the buyer . . . within the fifteen (15) day notice of redemption period, the buyer shall forfeit all claim to such motor vehicle. . . .

69 P.S. § 626(a); see Whiteman v. Degnan Chevrolet Inc., 217 Pa. Super. 424, 428 (1970) (section 626(a) "specifically provides for the forfeiture of all rights to the motor vehicle itself.").

Citadel contends that this provision of Pennsylvania's MVSFA, which allows the owner only a right to redeem the vehicle upon repossession and only for a very limited period of 15 days, differs from other jurisdictions and restricts this debtor's property rights under chapter 13. It asserts:

> The filing of the Petition under Chapter 13 of the Bankruptcy Code did not change the Debtor's rights under Pennsylvania law, and her only option was her right to redeem.

7

Citadel's Memorandum, at 4.  In support thereof, Citadel cites decisions such as In re Harrington, Bankr. No. 04-30028 (Bankr. E.D. Pa., Oct. 27, 2004); In re Morgan, 23 B.R. 700 (Bankr. E.D. Pa. 1982); and In re Haines, 10 B.R. 856 (Bankr. E.D. Pa. 1981).[6]

The debtor counters that those decisions applying Pennsylvania law to restrict application of section 542(a) overlook the Supreme Court's interpretation of this Bankruptcy Code provision in United States v. Whiting Pools, Inc.  Ms. Reid further relies upon decisions such as In re Singer, 368 B.R. 435 (Bankr. E.D. Pa. 2007); In re Patterson, 2000 WL 1692838 (Bankr. E.D. Pa. 2000); and In re Attinello, 38 B.R. 609 (Bankr. E.D. Pa. 1984), maintaining that Pennsylvania's limited right of redemption after repossession does not preclude a chapter 13 debtor from recovering the vehicle from the lender by virtue of federal bankruptcy law.

I decline the parties' invitation to analyze the effect of a chapter 13 filing upon a prepetition repossession pursuant to Pennsylvania's MVSFA.  Both parties have overlooked the terms of the financing contract, which states in relevant part:

---

[6]Citadel's contention that the debtor's right of redemption ended on December 26th, 15 days from the date of its notice, Citadel Memorandum, at 4, overlooks section 108(b) of the Bankruptcy Code.  See generally Counties Contracting and Construction Co. v. Constitution Life Insurance Co., 855 F.2d 1054 (3d Cir. 1988).  It may also misconstrue the extent of a vehicle owner's property rights upon repossession in Pennsylvania.  Citadel argues:

> With the exception of Florida (which allows for any surplus from the vehicle's sale to be awarded to debtor, thereby indicating that debtor still held a property interest in the vehicle) . . . .

Citadel Memorandum, at 4.  In fact, Pennsylvania law does entitle the vehicle owner to claim any surplus arising from the sale of the motor vehicle when redemption has not been exercised. Whiteman v. Degnan Chevrolet Inc.  Indeed, even when the redemption period has passed, the owner of the vehicle is entitled to notice of intended disposition as specified in the Pennsylvania Uniform Commercial Code.  Industrial Valley Bank and Trust Co. v. Nash, 349 Pa. Super. 27 (1985).

> 15. <u>SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE</u>: If we repossess without using a judicial process:
>
> a. <u>REDEMPTION</u>: You have the right to buy back (redeem) the Vehicle before we sell the Vehicle. If you do not redeem, you give up all claim to the Vehicle.
>
> b. <u>SALE</u>: . . . . If you don't redeem by the sale date, we will sell the Vehicle.
>
> \*\*\*
>
> 17. <u>GOVERNING LAW</u>: This contract is to be interpreted according to the law of Delaware.

Complaint, ex. A. As assignee, Citadel is bound by these provisions. <u>See</u> <u>generally</u> <u>Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.</u>, 247 F.3d 44, 60 (3d Cir. 2001) (an assignment does not alter the terms of the underlying contract).

Thus, in deciding whether this chapter 13 debtor has any right to compel turnover of the repossessed automobile from Citadel, to the extent that state law is germane it is Delaware law, not Pennsylvania, that should be considered.[7] Moreover, although Delaware has enacted a statute governing financing of the sales of motor vehicles, 5 Del. C. §§ 2901, <u>et</u> <u>seq.</u>, Delaware's version of the Uniform Commercial Code applies when a vehicle is repossessed following a default by the borrower. <u>See</u>, <u>e.g.</u>, <u>Hicklin v. Onyx Acceptance Corp.</u>, 970 A.2d 244, 249 (Del. 2009); <u>Clark v. D.O.W. Finance Corp.</u>, 2000 WL 973092 (Del. Super. 2000).

---

[7] Even if Pennsylvania law were applicable, to the extent the contract afforded Ms. Reid greater rights than specified in the MSVFA, the contract terms would prevail. <u>See</u> 13 Pa. C.S.A. § 9601(d); <u>see</u> <u>also</u> <u>In re Patterson</u>, 263 B.R. 82, 89 n.12 (Bankr. E.D. Pa 2001) (notice of redemption actually sent, informing the debtor of a right to redeem until the time of sale, waived the 15 day period under the MSVFA); <u>see</u> <u>generally</u> <u>Second Federal Savings and Loan Ass'n v. Brennan</u>, 409 Pa. Super. 581 (1991) (mortgagee required to provide notice specified in the mortgage agreement, even if state law did not so require).

B.

Delaware has enacted revised Article 9 of the Uniform Commercial Code. Under its terms, after repossession and sale of collateral by a secured creditor as permitted by 6 Del. C. § 9-610, a debtor may be liable for a deficiency or hold a right to a surplus. 6 Del. C. §§ 9-608, 9-615, 9-616. The secured creditor has a right to purchase the collateral at a public sale or, in limited circumstances, via a private sale. 6 Del. C. § 9-610(c). Upon repossession, the secured creditor must provide notice to the debtor of the intended disposition of the collateral. 6 Del. C. § 9-614. Furthermore, sale of the collateral has the following effect:

> (a) <u>Effects of disposition</u>.--A secured party's disposition of collateral after default:
>
> (1) transfers to a transferee for value all of the debtor's rights in the collateral;
>
> (2) discharges the security interest under which the disposition is made; and
>
> (3) discharges any subordinate security interest or other subordinate lien.

Del. C. § 9-617. Thus, after repossession, the secured creditor's lien exists and the debtor's rights in the collateral are not transferred until the collateral is sold. <u>See</u> <u>also</u> 6 Del. C. § 9-619 (permitting a secured creditor to authenticate a "transfer statement,"

which transfers rights to a transferee, but such statement does not constitute the disposition of the collateral).[8]

Finally, a debtor in Delaware has the right to redeem her collateral until its sale under section 9-610.  Del. C. § 9-623(c).

### III.

While there are decisions supporting Citadel's position opposing turnover, when a debtor files a bankruptcy petition under chapter 13 (or 11) after her vehicle has been repossessed, but before its sale by the secured creditor, "[t]he majority view provides that the vehicle is property of the estate and must be turned over to the debtor." 7 Norton Bank. L. & Prac. 3d, § 143:18 (2010).  For example, In re Estis, 311 B.R. 592 (Bankr. D. Kan. 2004), after analyzing the provisions of UCC Revised Article 9

---

[8] The Official Comment to § 9-619 explains in relevant part:

> Subsection (b) provides a simple mechanism for obtaining record or legal title, for use primarily when other law does not provide one.  Of course, use of this mechanism will not be effective to clear title to the extent that subsection (b) is preempted by federal law.  Subsection (b) contemplates a transfer of record or legal title to a third party, following a secured party's exercise of its disposition or acceptance remedies under this Part, as well as a transfer by a debtor to a secured party prior to the secured party's exercise of those remedies. Under subsection (c), a transfer of record or legal title (under subsection (b) or under other law) to a secured party prior to the exercise of those remedies merely puts the secured party in a position to pass legal or record title to a transferee at foreclosure. A secured party who has obtained record or legal title retains its duties with respect to enforcement of its security interest, and the debtor retains its rights as well.

(mentioned above), which were enacted by Kansas, the court concluded that the prepetition repossession of a vehicle does not transfer all of the debtor's ownership rights, those residual rights become property of the debtor's bankruptcy estate under section 541(a) upon commencement of the case, and the vehicle is subject to turnover under section 542(a) (upon demonstration of adequate protection). Furthermore, the secured claim of the lender is not eliminated by the UCC upon repossession. See also, e.g., In re Curry, 347 B.R. 596 (B.A.P. 6th Cir. 2006), aff'd, 509 F.3d 735 (6th Cir. 2007); Turnover Rights Revisited (Or Repudiated Sub Silentio?): Who "Owns" Collateral Repossessed by a Secured Creditor?, Bankruptcy Law Letter, 2002 WL 1786081 (Aug. 2002).

For the following reasons, the Supreme Court's decision in United States v. Whiting Pools, 462 U.S. 198 (1983), supports the position of decisions such as Curry and Estis. Therefore, Ms. Reid's bankruptcy estate under section 541(a) includes property rights provided by Delaware's Revised Article 9 of the UCC, which rights entitle her to turnover of the vehicle repossessed by Citadel pursuant to 11 U.S.C. § 542(a), upon provision of adequate protection.[9]

In Whiting Pools, the Internal Revenue Service had levied, prepetition, upon the taxpayer's personal property. It had also seized and was in possession of that

---

[9]In Whiting Pools, the Court expressly declined to address whether its interpretation of sections 541(a) and 542(a) applied in chapter 13 cases. Id., 462 U.S. at 208 n.17. As Citadel has not raised this issue (perhaps because many courts have addressed it and found the analysis of Whiting Pools applicable in chapter 13 cases, see, e.g., In re Attinello, 38 B.R. 609, 611 (Bankr. E.D. Pa. 1984)), I consider it waived.

I also do not consider whether section 541(b)(8), added to the Bankruptcy Code in 2005, is applicable to these facts. Citadel does not argue its applicability—possibly agreeing that this new exception to property of the bankruptcy estate was intended by Congress to apply only to pledges of property to pawnbrokers. See In re Mosher, 2007 WL 1487399, at *9 (Bankr. D. Mont. 2007).

12

personal property prior to the taxpayer filing a voluntary chapter 11 bankruptcy petition. Id, 462 U.S. at 200. Under federal law, as with the UCC, the debtor had a right of redemption until time of sale by the IRS. 26 U.S.C. § 6337(a). Indeed, the Court noted:

> The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its liens . . . and are analogous to the remedies available to private secured creditors. See Uniform Commercial Code § 9-503,[10] 3A U.L.A. 211-212 (1981); n. 14, supra. They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody.

Id., 462 U.S. at 210-11 (emphasis added).

Based upon federal law provisions analogous to the UCC, the Court concluded that the prepetition seizure did not "transfer ownership of the property to the IRS," id., 462 U.S. at 210, 211, and that section 542(a) of the Bankruptcy Code[11] is one of a number of provisions that "bring[s] into the [bankruptcy estate] property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." Id., 462 U.S. at 204. As explained by the Court:

---

[10]This reference is to a provision of the former version of Article 9.

[11]Section 542(a) states:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

13

>As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens. . . . In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.

Id., 462 U.S. at 207-08 (citations and footnotes omitted). The Supreme Court concluded:

>When property seized prior to the filing of a petition is drawn into the Chapter 11 reorganization estate, the Service's tax lien is not dissolved; nor is its status as a secured creditor destroyed. The IRS, under § 363(e),[12] remains entitled to adequate protection for its interests, to other rights enjoyed by secured creditors, and to the specific privileges accorded tax collectors. Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.

Id., 462 U.S. at 211-12; see also Lee v. Schweiker, 739 F.2d 870, 877 n.14 (3d Cir. 1984) ("Under the principles of the Supreme Court's decision in United States v. Whiting Pools, Inc. . . . a debtor may recover collateral transferred to a secured creditor within ninety days of bankruptcy, subject to the provision of adequate protection, if the property is necessary to effect a reorganization or rehabilitation.") (citations omitted); SPS Technologies, Inc. v. Baker Material Handling Corp., 153 B.R. 148 (E.D. Pa. 1993) (account receivable levied upon prepetition by secured creditor was subject to turnover

---

[12]Section 363(e) provides in relevant part:

>Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

upon the provision of adequate protection even if the debtor had no intention or ability to redeem).

Accordingly, I hold that, to the extent adequate protection is provided, the debtor in this proceeding had a right to turnover from Citadel of her repossessed automobile. (As noted earlier, I do not now address whether application of Pennsylvania rather than Delaware law would alter that result.) Furthermore, by agreement of the parties, this determination concludes this proceeding.

An appropriate order will be entered.